

162 F.3d 1158                                                Page 1
162 F.3d 1158, 1998 WL 545895 (C.A.4 (Va.))
**(Table, Text in WESTLAW), Unpublished Disposition**

Walton v. City of Manassas
C.A.4 (Va.),1998.
NOTICE: THIS IS AN UNPUBLISHED
OPINION.(The Court's decision is referenced in a
"Table of Decisions Without Reported Opinions"
appearing in the Federal Reporter. Use FI CTA4 Rule
36 for rules regarding the citation of unpublished
opinions.)
United States Court of Appeals, Fourth Circuit.
Joseph H. WALTON, Plaintiff-Appellant,
v.
CITY OF MANASSAS, Defendant-Appellee,
andDonald I. Echols; Wade Whetzel; Jeri Huggins,
Defendants.
**No. 97-2702.**

Submitted: July 28, 1998.
August 14, 1998.

Appeal from the United States District Court for the
Eastern District of Virginia, at Alexandria. Albert V.
Bryan, Jr., Senior District Judge. (CA-97-531-A)

Robert L. Cunningham, LAW OFFICES OF
ROBERT L. CUNNINGHAM, White Stone, Virginia,
for Appellant. Francis J. Prior,
Jr., SICILIANO, ELLIS, DYER & BOCCAROSSE,
Fairfax, Virginia, for Appellee.

Before NIEMEYER and HAMILTON, Circuit
Judges, and PHILLIPS, Senior Circuit Judge.

OPINION

PER CURIAM:
**\*1** Joseph Walton appeals from the district court's
grant of summary judgment in favor of the City of
Manassas in Walton's action filed under the
Americans with Disabilities Act of 1990, 42 U.S.C.A.
§§ 12101-12213 (West 1995 & Supp.1998), and from
the district court's denial of Walton's motion to alter or
amend the judgment. We affirm.

Walton was hired by the City of Manassas as a
waterworks operator in 1986. Manassas considered
Walton a good employee until 1992, when his
performance began to decline. Walton became

unreliable and would abandon his job post; his
supervisors were forced to assign him basic chores
rather than the duties of a waterworks operator. Even
though Walton's duties were decreased, he became
unwilling to perform the simple tasks assigned to him.
His behavior became increasingly bizarre, and he
began to speak incessantly of Lorena Bobbitt. In one
incident, Walton became upset when one of his
supervisors suggested that he see a doctor, and he
threatened to sue and then to kill the supervisor.
Overall, Walton's supervisors believed that he
presented a potential threat to the safety of himself and
the proper operation of the water plant, which could
jeopardize the water supply for Manassas.

On March 21, 1994, Walton met with Wade Whetzel,
the water plant supervisor, and Don Echols, the water
and sewer superintendent. Echols and Whetzel agreed
to let Walton take paid vacation time from March 21
to March 26. Due to the concern over Walton's
behavior and his deteriorating job performance,
Echols and Whetzel told Walton that if he wished to
retain his position, he should contact Echols by March
28 with a decision on whether he wished to return to
work, and then report to the Employee Assistance
Program (EAP). Rather than contacting his superiors,
on March 28 Walton had a co-worker deliver a letter
to Echols and Whetzel, in which Walton stated that he
refused to attend the EAP.

Walton then instructed a fellow employee to remove
all personal items from his locker at work and take
them to Culpeper, where Walton lived. Walton did not
contact his superiors during this time, and he remained
absent from work. On April 1, Echols forwarded
Walton a letter stating that Walton's refusal to
communicate with management staff, his request to
have all his items removed from his work locker, and
his continued absence without approved leave from
work were interpreted as job abandonment.
Accordingly, Manassas accepted these actions as
Walton's resignation, effective March 31, 1994.

Walton filed this action under the Americans with
Disabilities Act. Walton contended that he did not in
fact suffer from a disability, but that Manassas
regarded him as having a disability, thus bringing him
within the protection of the Act. Walton claimed that

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

162 F.3d 1158                                                                                                    Page 2
162 F.3d 1158, 1998 WL 545895 (C.A.4 (Va.))
**(Table, Text in WESTLAW), Unpublished Disposition**

Manassas terminated Walton due to this perceived mental disability. The district court granted Manassas' motion for summary judgment, holding that Manassas offered a legitimate reason for terminating Walton, misconduct, which Walton failed to show was pretextual. Walton subsequently moved to alter or amend the judgment, and the district court denied the motion. Walton appeals from both orders.

**\*2** We review the district court's grant of summary judgment de novo, *see Chisolm v. TranSouth Fin. Corp.,* 95 F.3d 331, 334 (4th Cir.1996), and the district court's denial of Walton's motion to alter or amend the judgment under Fed.R.Civ.P. 59(e) for an abuse of discretion. *See Collison v. International Chem. Workers Union,* 34 F.3d 233, 236 (4th Cir.1994).

Even assuming Walton could make out a prima facie case of discrimination, he fails to rebut Manassas' legitimate, nondiscriminatory reasons for terminating his employment. Walton agreed on March 21 that he would notify Manassas on March 28 whether he agreed to attend EAP and thus retain his position. Rather than contact Manassas, Walton had an intermediary deliver a letter to Manassas which stated that he refused to attend EAP. Walton also had a fellow employee remove all his belongings from his work locker and take them to Walton's home. Walton remained absent from work for the next four days without leave and without contacting his superiors. On the fourth day, Manassas determined that Walton had abandoned his position, and thus terminated his employment effective March 31. Walton offers no evidence that Manassas' legitimate, nondiscriminatory reason for terminating him, misconduct relating to his unexcused absence from work and apparent abandonment of his position, was pretextual. *See Halperin v. Abacus Technical Corp.,* 128 F.3d 191, 196 (4th Cir.1997); *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 58 (4th Cir.1995). Accordingly, Walton failed to meet his burden of showing that he was the victim of intentional discrimination. *See Ennis,* 53 F.3d at 59;*see also Martinson v. Kinney Shoe Corp.,* 104 F.3d 683, 686 n. 3 (4th Cir.1997) (noting that employer is free to discharge employee for misconduct even when related to disability). ^FN* The district court likewise did not abuse its discretion in denying Walton's motion to alter or amend the judgment. *See Collison,* 34 F.3d at 236;*Hutchinson v. Staton,* 994 F.2d 1076, 1081-82 (4th Cir.1993).

FN*To the extent that Walton contends that requiring him to attend EAP as a condition of keeping his employment violated the ADA, such conditioning is not itself a violation of the ADA. *See Cody v. Cigna Healthcare,* 139 F.3d 595, 598-99 (8th Cir.1998); *Duda v. Board of Educ.,* 133 F.3d 1054, 1060 (7th Cir.1998).

We affirm the district court's grant of summary judgment to Manassas, and affirm the district court's denial of Walton's motion to alter or amend the judgment. We dispense with oral argument because the facts and legal contentions are adequately set forth in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*_____
_____

C.A.4 (Va.),1998.
Walton v. City of Manassas
162 F.3d 1158, 1998 WL 545895 (C.A.4 (Va.))

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.